```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
DORIS CANDELARIE, as Trustee of the
MARCEL A. TRUJILLO 2503(C) TRUST,

                    Plaintiff,
         -against-                      MEMORANDUM AND DECISION
                                        08-CV-1714 (JS) (AKT)
SCIENTIFIC INNOVATIONS, INC.,
JOSEPH H. BRONDO, JR., and
PHYLLIS P. BRONDO,

                    Defendants.
-------------------------------------X
Appearances:
For Plaintiff:      J. Joseph Bainton, Esq.
                    Bainton McCarthy LLC
                    26 Broadway, Suite 2400
                    New York, NY 10004-1840

For Defendants:     Richard E. Hershenson, Esq.
                    Meyer & Heim LLP
                    444 Madison Avenue, 30th Floor
                    New York, NY 10022
```

SEYBERT, District Judge:

On April 25, 2008, Doris Candelarie ("Plaintiff") commenced this action, requesting relief on four claims. First, Plaintiff claims that Scientific Innovations, Inc. ("SII") owes Marcel Trujillo's trust $350,000 on an account stated. Plaintiff's second and third claims allege fraudulent transfers against SII, Joseph H. Brondo, and Phyllis P. Brondo (collectively, "Defendants"). Lastly, Plaintiff claims that the Brondos face alter ego liability for the $350,000 allegedly owed by SII. Before the Court are Plaintiff's motion for summary judgment on her first claim and Defendants' motion for summary judgment on all four claims. For the foregoing reasons, both motions are DENIED.

BACKGROUND

Anthony and Denise Trujillo created two trusts, one for their son Marcel A. Trujillo and the other for their son Dominic A. Trujillo. (Trujillo Decl. ¶¶ 1–2). Plaintiff is Anthony Trujillo's sister and the sole trustee for both trusts. (Id. ¶ 3; Compl. ¶ 2). Like Anthony, Denise and Marcel A. Trujillo, Plaintiff is a Colorado citizen. (Compl. ¶¶ 1-3). SII is incorporated and maintains its principal place of business in New York. (Brondo Aff. ¶ 15). Joseph Brondo is and always has been the president and a director of SII. (Id. ¶ 16). Joseph and Phyllis Brondo are married. (Compl. ¶ 7).

According to SII's original business plan, SII sought to "employ patents for the purpose of developing, testing and deploying explosive detection systems based on gamma resonance technology . . . ." (Def. Stmt. ¶ 17; Pl. Counter-Stmt. ¶ 17). SII's systems were to be used for "anti-terrorism technology," as well as "X-ray machines, MRIs and similar technology." (Id).

In 1999, Anthony Trujillo met Joseph Brondo to discuss investing in SII. (Def. Stmt. ¶ 28; Pl. Counter-Stmt. ¶ 28). During these discussions, Defendants claim that Mr. Trujillo agreed to invest a total of $500,000 in SII in exchange for 600 shares. (Def. Stmt. ¶ 29). Defendants further claim that, in consideration, they agreed to issue 120 shares upon Mr. Trujillo's initial investment of $100,000, but were not obligated to issue the

2

remaining 480 shares until Mr. Trujillo entirely fulfilled his $500,000 investment commitment. (Def. Stmt. ¶¶ 29, 33, 34). Defendants, however, submitted no contemporary documentary evidence reflecting such an agreement, which was evidently oral. Plaintiff denies that Mr. Trujillo agreed to invest $500,000 for SII stock, and further denies that, under this agreement, Mr. Trujillo would continue to invest money but receive no further stock until he invested $500,000. (Pl. Counter-Stmt. ¶¶ 29, 33, 34).

On June 8, 2000, Mr. Trujillo sent two $50,000 checks to SII, and received sixty shares of SII stock for Marcel's trust and another sixty shares for Dominic's trust. (Def. Stmt. ¶¶ 30-32, Pl. Counter-Stmt. ¶¶ 30-32). On November 14, 2000, Mr. Trujillo sent two more $50,000 checks, with one designated "REMITTER TRUST FOR MARCEL A. TRUJILLO" and the other designated "REMITTER TRUST FOR DOMINIC A. TRUJILLO." (Def. Stmt. ¶ 35; Pl. Counter-Stmt. ¶ 35). In January 2001, Mr. Trujillo sent two more $50,000 checks to SII. (Def. Ex. F). One of these checks was designated "loan to SII," while the other did not list any express purpose. (Id). In April 2001, Mr. Trujillo sent another $50,000 check, again without designating a specific purpose for it. Finally, in October and December 2001, Mr. Trujillo sent two more $50,000 checks, each designated "REMITTER ANTHONY J. TRUJILLO." Thus, over the course of roughly 18 months, Mr. Trujillo invested a total of $450,000 in SII, but received share certificates for only $100,000 of that

3

investment.

On January 8, 2002, SII wrote Denise Trujillo to provide her "with a summary of your investment to date." This summary represented, in its entirety:

        Amount Invested     $250,000.00[1]
        Cost of Shares       $833.33
        Quantity of Shares   300.00

On October 24, 2003, Mr. Trujillo wrote Mr. Brondo to request the remaining 420 stock certificates that he believed he was owed based upon his $450,000 investment. (Def. Ex. J). Mr. Brondo responded on October 27, 2003, stating that his stock purchases were "based on an investment of $500,000" and that he would not receive any more stock until he "complete[s] [his] agreed investment in sending the remaining $50,000." (Id). Later that day, Mr. Trujillo replied to Mr. Brondo. (Def. Ex. K). This reply neither confirmed nor denied the existence of the agreement Mr. Brondo mentioned, but it did not repeat Mr. Trujillo's initial request for immediate stock issuance. (Id). On October 28, 2003, Mr. Brondo responded and once again asserted that Mr. Trujillo had agreed to invest $500,000, with stock issuing only upon Mr. Trujillo fulfilling his full investment commitment. (Def. Ex. L)

---

[1] Based on the facts above, the Court theorizes, without holding as a matter of law, that the reference to $250,000 may have reflected the Trujillos express designation of only $200,000 (i.e., the first four $50,000 checks) of their $450,000 investment as remitter for their children's trusts. This would leave $250,000 that the Trujillos may have intended to hold on their own.

4

In September 2004, SII announced that it was dissolving and re-incorporating, and offered existing shareholders the opportunity to either carry on their investment into the new company, or write off their investment as a capital loss on their taxes. (Pl. Ex. P). On the election form, the Trujillos (and Dories Candelarie as Trustee) elected to "provide further investment in the amount of $1,000.00 to 50k." (Def. Ex. N). The Trujillos further commented that "The Trujillo Family investment of $450,000.00 was and is for equity. $50k/60 shares for Dominic, $50k/60 shares for Marcel along with $350k for Denise and Anthony Trujillo[;] the additional <u>$350k capital loaned</u> was requested for Patents we have not received shares for this, or patents. My family and I <u>expect to receive</u> the amount of <u>equity in the new company equal to the $450,000.00 invested</u>." (Id.) (emphasis supplied).

On April 7, 2007, Plaintiff (in her capacity as trustee for both trusts) commenced a petition in New York Supreme Court to inspect SII's corporate books and records. On August 7, 2007, the New York Supreme Court granted Plaintiff's petition. SII's Stock Book, produced in response to that Petition, lists, under the "Loans" category, an entry for $350,000 next to "Trujillo C/O Doris Candelarie, Trustee    Marcel A." (Pl. Ex. R).[2] This suit

---

[2] Defendants argue that Plaintiff bases her claim on the document found in Def. Ex. P, which Mr. Brondo claims is "a document which is for my own use in keeping track of

5

followed.

DISCUSSION

I.  Standard of Review on Summary Judgment

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact,

---

shareholders' investments." (Brondo Aff. ¶ 57). But Defendants do not dispute the authenticity of Pl. Ex. R.

6

once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Similarly, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. Where, as here, parties file cross-motions for summary judgment, the Court must still review each motion separately. See Home Ins. Co. v. Aetna Cas. and Sur. Co., 528 F.2d 1388, 1390 (2d Cir. 1976) ("The fact that both sides in the instant case sought summary judgment does not make it more readily available." (citing American Mfrs. Mut.Ins. Co. v. American Broadcasting-Theatres, Inc., 388 F.2d 272, 279 (2d Cir. 1967)); Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968) ("Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment . . . .").

## II. Statute of Limitations[3]

Both sides have moved for summary judgment on Plaintiff's account stated claim. Before turning to the merits of this claim,

---

[3] At the pre-motion conference, the parties requested that the Court decide their dueling summary judgment motions without full briefing, relying instead on the letters and documents the parties submitted in connection with the pre-motion conference. Thus, while Defendants submitted a memorandum of law in support of their summary judgment motion, Plaintiff submitted only a one page document entitled "NOTICE OF CROSS-MOTION." Neither party submitted any opposition to the other's summary judgment motion papers, or any reply papers on behalf of their own motion.

7

however, the parties agree that the statute of limitations poses an initial burden that must be overcome because Mr. Trujillo made his final investment in 2001, while Plaintiff did not commence this suit until 2008. Plaintiff argues that N.Y. General Obligations Law § 17-101 revives her claims. That law states that "[a]n acknowledgment or promise contained in a writing signed by the party to be charged thereby" operates to revive otherwise time-barred actions. Here, Plaintiff contends that SII's Stock Book record of a $350,000 "loan" from the Marcel A. Trujillo Trust constitutes such an "acknowledgment or promise." In this regard, Plaintiff correctly notes that – under New York law – the continued carrying of an item on corporate or financial records operates to revive the statute of limitations, under a theory that the records reflect the continued validity of an old debt. See Chase Manhattan Bank v. Polimeni, 258 A.D.2d 361, 361, 685 N.Y.S.2d 226, 226 (1st Dep't 1999) (personal financial records); Daewoo Intern. (America) Corp. Creditor Trust v. SSTS America Corp., 02-CV-9629, 2004 WL 1488511, *4 (S.D.N.Y. 2004) ("an acknowledgment on the company books is sufficient to toll the statute of limitations"); Clarkson Co. v. Shaheen, 533 F. Supp. 905, 932 (S.D.N.Y. 1982) (debtor's acknowledgment of its obligation to creditor in its annual report and fact that it carried debt on its books for at least two years amounted to "clear recognition of the continuing validity of the obligation").

Defendants respond by arguing that, despite recording the Trujillos' investment as a "loan" on SII's books, the Trujillos' investment was <u>not</u> a loan. Defendants contend (based on a <u>different</u> document than the one Plaintiff relies upon) that SII recorded the Trujillos' investment as a loan solely for Mr. Brondo's "own use," and that the entry actually reflected stock that was paid for but not delivered. Brondo Aff. ¶¶ 57, 58. Thus, according to Defendants, SII's Stock Book did not "acknowledge" a loan, because no loan existed.

As can be seen above, questions concerning the limitations period blur into the merits. Defendants do not argue that Plaintiff's action would be time-barred if the Court construes the Trujillos' investment as a loan. And Plaintiff does not dispute that, if not a loan, they have no cause of action at all. Because the Court finds that issues of fact exist concerning whether all or part of the Trujillos' investment constituted a "loan," it cannot find that Plaintiff's action is time barred as a matter of law.

III. <u>The Merits of Plaintiff's Account Stated Claim</u>

"An account stated may be defined, broadly, as an agreement, express or implied, between the parties to an account based upon prior transactions between them, with respect to the correctness of the separate items composing the account, and the balance, if any, in favor of the one or the other." 1 N.Y. JUR. 2D

ACCOUNTS AND ACCOUNTING § 10 (collecting cases). A debtor's acknowledgment can be implied by the debtor's failure to object to an account within a "reasonable time." Yannelli, Zevin & Civardi v. Sakol, 298 A.D.2d 579, 580, 749 N.Y.S.2d 270, 270 - 271 (2d Dep't 2002). Although an account stated requires the debtor to acknowledge the debt, New York law apparently does not require plaintiffs proceeding on an account stated claim to establish that the debtor promised to pay it.[4] However, there can be no account stated "where any dispute about the account is shown to have existed." Abbott, Duncan & Wiener v. Ragusa, 214 A.D.2d 412, 413, 625 N.Y.S.2d 178 (1st Dep't 1995). Thus, to prevail on her account stated claim, Plaintiff must establish not only that Defendants owe

---

[4] A promise to pay was, apparently, one of the elements of the original common law cause of action. See, Reisman, Peirez & Reisman, L.L.P. v. Gazzara, 839 N.Y.S.2d 436 (Table), 2007 WL 949436, *1-2 (N.Y. Sup. Ct., Nassau County 2007) (unreported). In practice however, New York has frequently recognized account stated claims based on a debtor's acknowledgment of a debt, even without any apparent evidence that the debtor promised to pay it. See, generally, e.g., Miller v. Nadler, 60 A.D.3d 499, 499, 875 N.Y.S.2d 461, 462 (1st Dep't 2009) (plaintiff entitled to summary judgment because debtor "received and retained the invoice without objection"); Citibank (South Dakota) N.A. v. Jones, 272 A.D.2d 815, 815-816, 708 N.Y.S.2d 517, 518 - 519 (3d Dep't 2000) (account stated based on defendant's receipt of invoices and failure to object to them); Sherman Acq. Ltd. P'ship v. Thomas, 801 N.Y.S.2d 781 (Table), 2005 WL 1592968, *1 (N.Y. Sup. Ct. App. 2nd & 11th Jud. Dist. 2005) (unreported) (credit card company established account stated claim where debtor admitted to "ow[ing] the debt and merely stated that she was out of work for most of the year"); Citibank (S.D.) N.A. v. Forgione, 798 N.Y.S.2d 708 (Table), 2004 WL 2453263, *1 (N.Y. Sup. Ct. App. 2d & 11th Jud. Dist. 2004) (unreported) (credit card company established account stated where the evidence showed that debtor received credit card statements and never disputed them).

the "loan" showed on SII's books, but that there was not even any genuine dispute concerning this debt.

The account stated claim pled here is, at a minimum, unusual. Plaintiff does not base her claim on an account she stated to Defendants. Instead, she bases it on SII's own financial records. Thus, the merit of her account stated claim does not depend on whether Defendants expressly or implicitly accented to an account. Instead, it turns on how to understand SII's recording of a "loan" between the parties, in light of the underlying circumstances. Nevertheless, the parties have pointed to no law suggesting that a plaintiff cannot maintain an account stated claim premised upon an account the defendant, effectively, stated to itself in its own financial records. And the Court's own review of New York law found nothing to prohibit such a claim. So the Court turns to examining whether any interpretation of those records is so compelling that a reasonable jury could not disagree.[5]

Undertaking this inquiry, the Court concludes that neither party is entitled to judgment as a matter of law. Indeed, piercing through the evidence, the Court believes that a reasonable

---

[5] Given the unusualness of Plaintiff's account stated claim, better briefing on the subject would probably have been helpful to the Court in understanding the issue. But it is unlikely that such briefing would have been outcome determinative. A thorough review of the documentary evidence, Mr. Trujillo's Declaration and Mr. Brondo's Affidavit demonstrates that the parties dispute several material facts. Thus, the parties' counsel probably made a wise strategic decision in foregoing full briefing - as, in so doing, they likely saved their clients' significant legal fees.

jury could reach several different conclusions concerning the nature of the Trujillos' investment, and its subsequent recording as a "loan."  For instance, a reasonable jury could believe:

1. Trujillo always intended for the investment to be equity, and agreed to an arrangement with SII whereby 480 shares would not issue until Trujillo completed a $500,000 investment. See, e.g., Def. Ex. J, K, L (Brondo's representations of this agreement).  SII's Stock Book reflected SII's understanding of how to account for stock that was paid for but not issued. Pl. Ex. R.

2. Trujillo always intended for the investment to be equity, and SII breached its contract with Trujillo by not issuing stock in consideration. See, e.g., Def. Ex. H (Brondo's letter indicating that the Trujillos owned 300 shares); Def. Ex. N ("The Trujillo Family investment of $450,000.00 was and is for equity. $50k/60 shares for Dominic, $50k/60 shares for Marcel along with $350k for Denise and Anthony Trujillo").  SII's Stock Book reflected SII's understanding of how to account for stock that was paid for but not issued. Pl. Ex. R.

3. Trujillo originally intended for all or part of the $350,000 invested but not paid for in stock to be a loan.  See, e.g., Def. Ex. F ($50,000 check designated a "loan to SII"); Def. Ex. N (Trujillo referencing "$350k capital loaned"); Pl. Ex. R.  Trujillo offered to convert this loan into equity (Def. Ex. N), but SII never accepted his offer.  SII's Stock Book reflected this original intent by classifying the $350,000 as a loan. Pl. Ex. R.

4. Trujillo originally intended for all or part of the $350,000 invested but not paid for in stock to be equity. However, upon SII's failure to issue stock in consideration for it, Trujillo and SII agreed to convert the $350,000 into a loan.  See, e.g., Def. Ex. N; Pl. Ex. R.  Trujillo later offered to re-convert the loan back into equity (Def. Ex. N), but SII never accepted his offer.  SII's Stock Book reflected this conversion by classifying the $350,000 as a loan. Pl. Ex. R.

12

> 5. The parties never reached a true "meeting of the minds" concerning the nature and conditions of Trujillo's investment. SII's Stock Book reflected either SII's understanding of how to account for stock that was paid for but not issued, or SII's own internal confusion regarding how to classify the Trujillos' investment.[6]

Because Plaintiff's burden is high (needing to establish not only the debt, but also no "dispute" over it) Defendants would prevail under theories 1 and 2 and probably theory 5 as well. Abbott, 625 N.Y.S.2d at 178. Plaintiff, in turn, would prevail under theories 3 and 4. The Court's list is, however, potentially non-exhaustive. A rational trier of fact could very well reach a conclusion that the Court did not think of in drafting this opinion, and find for one side based on that conclusion.

The need for a trier of fact is especially pressing in this case because both parties ask the Court to accept that the Trujillos and SII entered into an arguably implausible oral contract. Plaintiff would have the trier of fact believe that the Trujillos "loaned" $350,000 to SII without documenting that loan's terms and conditions, including interest rate, collateral and date

---

[6] For now, Plaintiff is the proper party pursuing these claims, as SII's Stock Book lists the $350,000 as a loan from the Marcel A. Trujillo Trust. However, there is scant – if any – evidence that the Trujillos intended to dedicate the entire $350,000 to this trust. Thus, it may be that the Stock Book accurately describes the investment as a "loan," but inaccurately describes who the creditor is. Accordingly, Plaintiff is advised to amend her Complaint to name additional prospective creditors as plaintiffs – lest Plaintiff lose at trial on the technical grounds that the Marcel A. Trujillo Trust has no entitlement to the money.

of repayment.  For their part, Defendants ask the trier of fact to accept that Trujillo orally agreed to invest $500,000, and orally agreed that SII would not issue more than $100,000 worth of shares in consideration of this investment until it received the full $500,000.  Or, from another perspective, Defendants arguably ask the trier of fact to believe that SII, essentially, entered into an oral contract to grant Trujillo an indefinite option to purchase 480 shares at a set price (having never taken action to enforce Trujillo's alleged obligation to invest $500,000) in consideration of Trujillo's initial $100,000 investment, with Trujillo needing to exercise the option in full.

Similarly, Plaintiff implausibly asks the Court to hold, as a matter of law, that the $350,000 was a loan even though they failed to <u>plead</u> (much less evidence) that: (1) the Trujillos originally intended for the investment to be a loan; or (2) the Trujillos agreed with SII to convert the investment into a loan. Indeed, Anthony Trujillo's own declaration admits that he asked Joseph Brondo "to issue stock to my wife and me in consideration of this $350,000 payment," but that Joseph Brondo "refused to do so." Trujillo Decl. ¶ 12.  On the other hand, Defendants implausibly ask the Court to hold, as a matter of law, that an item which Defendants marked under "loans" in their <u>own</u> Stock Book was not a "loan."  And all Defendants have to back up that argument is Mr. Brondo's claim (based on his review of a different document than

the one Plaintiff relies upon) that, essentially, SII's Stock Book was just for his own "use" and wasn't meant to be taken seriously. See Brondo Aff. ¶ 57.

Of course, just because something is implausible does not mean that it didn't happen. People sometimes engage in implausible, illogical or improbable conduct. So at least one of the parties may very well be accurately representing the facts. But given the implausibility of either party's version of events, credibility determinations are even more important than in a typical case. And credibility is something that must be determined by the trier of fact – not on summary judgment.

IV. Plaintiff's Remaining Claims

Defendants' motion also seeks summary judgment on Plaintiff's remaining fraudulent transfer and alter ego claims. And it is also denied with respect to those claims.

With respect to the fraudulent transfer claims, Defendants premise their purported right to summary judgment on Plaintiff's alleged status as a stockholder, not a creditor. Def. Br. at 4-5. But, as discussed above, the Court cannot say as a matter of law that Plaintiff is not an SII-creditor. Defendants present no reasons why they are entitled to summary judgment. Thus, summary judgment on these claims is denied.

An as to the fourth claim, for alter ego liability, Defendants say nothing more than that it should be "dismissed"

because "it is based on the first three Claims for Relief which have no merit." Def. Br. at 5. But since the Court cannot say, as a matter of law, that these claims "have no merit," summary judgment on the alter ego claim is also denied.

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment on all four claims is DENIED. Plaintiff's cross-motion for summary judgment on her first claim is also DENIED.

SO ORDERED

 /s/ Joanna Seybert 

Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          August 28, 2009